STATE OF NORTH CAROLINA v. WILLIAM DONALD POLAND, Defendant

No. COA01-228

(Filed 19 February 2002)

**1. Constitutional Law— bench conference—outside defendant's hearing**

The trial court did not err in an assault prosecution by moving a bench conference away from the bench to prevent defendant from hearing the conversation where the subject was defendant's record and defendant's attorney was presumably familiar with defendant's record.

**2. Criminal Law— defendant admonished—mistrial denied**

The trial court did not err by denying a mistrial to an assault defendant who was admonished by the court for listening to a bench conference. Two of the three witnesses called by defendant testified that they neither heard nor saw the admonishment and the third testified only that the judge raised his voice, frowned, and used a stern tone and look. Furthermore, the jury convicted defendant on a lesser assault charge and acquitted him on an accompanying trespass charge, which does not support the claim that jurors were led to see defendant as a "wrongdoer."

**3. Assault— serious injury—sufficiency of evidence**

The trial court did not err by refusing to dismiss an assault charge for insufficient evidence of serious injury where the victim sustained a knife wound which punctured his colon in two places, another that could have severed an artery, he was in intensive care for four days, had 27 or 28 stitches in his right index finger, and now has a limited grip.

**4. Assault— self-defense—evidence of excessive force and aggression**

The trial court correctly denied a motion to dismiss an assault prosecution where defendant argued self-defense but the State presented evidence that defendant was the aggressor and used excessive force.

**5. Assault— conflicting evidence of aggression—evidence of excessive force**

The trial court did not err by failing to arrest judgment on guilty verdicts on assault charges after the jury returned an

acquittal on a trespass charge arising from the same incident. Although defendant argued that the acquittal means that the jury believed his testimony that he was pulled back into the area where the fight began, the jury could have rejected defendant's self-defense theory on the ground that he used excessive force.

## 6. Evidence— hearsay—catch-all exception—statement from nontestifying witness—duplicative

There was no prejudice in an assault prosecution where the court refused defendant's motion to introduce a prior statement of a witness who refused to testify under the catch-all exception of N.C.G.S. § 8C-1, Rule 804(b) where defendant did not explain how the statement would have contributed to his defense, other than adding to the six descriptions of the events from those who testified.

Appeal by defendant from judgments entered 5 September 2000 by Judge Thomas D. Haigwood in Pitt County Superior Court. Heard in the Court of Appeals 5 December 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Linda Kimbell, for the State.*

*John T. Hall, for defendant-appellant.*

HUDSON, Judge.

Defendant appeals his convictions and sentence for two counts of assault with a deadly weapon and one count of assault with a deadly weapon inflicting serious injury. We find no prejudicial error.

The State's evidence tended to show that on the night of 24 April 1999, Defendant, Tammy Little, T. J. House, William Skinner, Ken Nichols, and Michelle Bullock, went to Pantana Bob's, a bar in Greenville, North Carolina. Michael Murphy was a bartender working at the back bar of Pantana Bob's. After Defendant was rude to Murphy, Murphy told him to leave the bar. Murphy signaled to Prentice Jackson, a "bouncer," to escort Defendant out of the premises.

Jackson escorted Defendant to the beach area. When Jackson and Defendant were about halfway across the beach area, House grabbed Jackson's right arm, and Bullock jumped on Jackson's back and tried to hit him on the head with a beer bottle. Jackson pushed House away and picked Bullock off his back and pushed her away.

Jackson then found himself fighting off Defendant, House, Bullock, and Skinner. Chris Carden, who had worked at Pantana Bob's, Ted Moche, who was working as a bouncer that night, and Murphy came to Jackson's assistance. They pushed Defendant, House, Bullock, and Skinner out of Pantana Bob's through the door in the beach area. The Pantana Bob's employees were unable to close the door, however, because Skinner was holding it open.

Skinner held the door open while kicking and throwing sand in the employees' faces, and the employees continued to attempt to close the door. Then, according to the State's evidence, Defendant, Skinner, and House forced their way into the beach area, and a fight ensued between them and the bouncers. During the fight, Defendant pulled out a knife and stabbed Murphy, Moche, and Carden. Defendant testified that he was holding onto Skinner, and Skinner stormed in, pulling Defendant with him. Defendant was hit and fell to the ground, and then five or six bouncers were on top of him, hitting and kicking him. Defendant pulled out the knife to defend himself.

Murphy, Moche, and Carden were taken to the hospital for treatment. Carden was stabbed below his left rib, in the left forearm, and in the right index finger. Dr. Janice Lalikos, a plastic surgeon, treated Carden. She performed exploratory surgery on his arm because, due to the location of the wound, she was concerned that he might have sustained an injury to a major nerve, which would cause permanent disability, or an injury to a major artery, which would be life-threatening. Dr. Lalikos did not find nerve or artery damage, but she did remove a clot to relieve swelling and prevent nerve damage. She also repaired a nerve and tendons in Carden's finger. Dr. Carl Haish performed an exploratory laparotomy to investigate the wound in Carden's abdomen. Carden had two stab wounds to his colon. Dr. Haish testified that if the wounds had been left untreated, Carden would have become septic, resulting in a high probability of infection, which would likely lead to intra-abdominal abscess or death. Carden was hospitalized for five days, four of which he spent in intensive care. Carden testified that he is now "disfigure[d]", with a big scar from the exploratory surgery near his rib, and he cannot straighten out his finger, so that he has a limited grip.

Defendant testified that after the fight his nose hurt, and he had knots on his head. He was immediately taken into custody, and when he arrived at the detention center on 25 April 1999, Defendant was

**STATE v. POLAND**

[148 N.C. App. 588 (2002)]

asked if he had any obvious pain, bleeding, or other symptoms requiring emergency service or other medical problems; he answered that he did not. On 30 April 1999, while Defendant was at the detention center, he was examined by Dr. Mark Cervi, who found swelling in Defendant's nose, and tenderness in his left hand. Later, on 13 May 1999, Defendant was diagnosed with a small crack in his nasal bone, a sprained right ankle, and a sprained finger.

Defendant was charged with three counts of assault with a deadly weapon with intent to kill inflicting serious injury, in violation of N.C. Gen. Stat. § 14-32(a) (1999), and one count of first degree trespass, in violation of N.C. Gen. Stat. § 14-159.12 (1999).

During the trial, while Defendant was on the stand, the court held a bench conference regarding the scope of permissible cross-examination on the subject of Defendant's criminal record. The judge realized that Defendant was listening to the conversation, admonished Defendant, and then moved the conference out of Defendant's hearing. When court recessed for the day, the defense made an oral motion for mistrial on the basis of the court's reaction to Defendant.

In response to Defendant's motion for mistrial, the court held a *voir dire* and allowed the defense to call three witnesses. The first two witnesses stated that they were not paying attention to the proceedings and did not see or hear the court admonish Defendant. The third witness testified in response to the defense counsel's questions as follows:

Q. What did you see and what could you hear?

A. You and the District Attorney went up and talked to the Judge, and [I] couldn't hear anything you were saying at that time; and the next thing I heard, the Judge hollered out, "sir" to the defendant, and then made—wrinkled up his forehead and—I couldn't hear what he said to the defendant.

Q. Did he point at the defendant?

A. Yes, sir.

Q. And what happened? Could you see the gestures on the Judge's face?

A. Yes, sir. He made some frowns in his forehead and he had a stern look on his face.

STATE v. POLAND

[148 N.C. App. 588 (2002)]

Q. Did he get up from his place on the bench?

A. Yes, sir. At that point he said something loud enough that it sounded like that the—whoever was sitting in this chair was not supposed to be hearing what was going on, and he would talk to you over at the side.

Q. What tone of voice could you hear?

A. Kind of stern.

Q. Did he get up quickly and move to the side-bar?

A. I don't know if he got up or if he was already up. I don't remember whether he was standing up or sitting down at that time.

Q. How loud was the word "sir"?

A. Pretty loud—"sir." I mean, it was loud enough that we heard it back there.

Q. Shouting, in other words?

A. Yes.

The court refused to grant a mistrial, but gave the following curative instruction to the jury when court reconvened the next day:

Let me just say one thing to you before we resume the evidence in this case. Let me say this to you. That you're not to draw any inference from any ruling that I make, have made, or will make in this case, or any inflection in my voice, or any expression on my face, or any question that I have asked a witness, or anything else that I may have said or done during this trial, that I have an opinion or have intimated an opinion, as to whether any part of the evidence should be believed or disbelieved, or as to whether any fact has or has not been proven, or as to what your findings ought to be. It is your exclusive province, and will be your exclusive province, to find the true facts of this case and to render a verdict reflecting the truth as you find it.

The jury convicted Defendant of assault with a deadly weapon upon Theodore S. Moche; assault with a deadly weapon upon Michael Murphy; and assault with a deadly weapon inflicting serious injury upon Chris Larry Carden. The jury acquitted Defendant of first degree trespass.

Defendant made eight assignments of error, which he has combined into five arguments on appeal. We address each argument in turn.

I.

**[1]** In his first argument, Defendant contends that the trial court denied him his right to be present at and to participate in his trial when the court moved the bench conference away from the bench to prevent Defendant from overhearing the conversation. The State contends that Defendant failed to preserve this issue for review because he did not object on this specific ground at the trial, and that he waived the right to be present at this bench conference by failing to object to his exclusion from others. Assuming *arguendo* that Defendant properly preserved this issue for review and did not waive any right that he had to be present at bench proceedings, we hold that the court did not violate Defendant's rights by continuing the bench conference at issue out of Defendant's hearing.

In *State v. Buchanan*, 330 N.C. 202, 410 S.E.2d 832 (1991), our Supreme Court addressed the issue raised by Defendant here. The defendant in *Buchanan*, a capital case, argued that the trial court violated his state and federal rights by conducting bench conferences with his counsel and counsel for the State in his absence. *See* 330 N.C. at 208, 410 S.E.2d at 835-36. After observing that the right guaranteed in our State Constitution is broader than the federal right, the Court held that "a defendant's state constitutional right to be present at all stages of his capital trial is not violated when, with defendant present in the courtroom, the trial court conducts bench conferences, even though unrecorded, with counsel for both parties," unless "the subject matter of the conference implicates the defendant's confrontation rights, or is such that the defendant's presence would have a reasonably substantial relation to his opportunity to defend." *Id.* at 223-24, 410 S.E.2d at 845. The defendant has the burden to show that his confrontation rights are implicated or his presence would have a reasonably substantial relation to his opportunity to defend. *See id.* at 224, 410 S.E.2d at 845.

Defendant contends that because the subject of the bench conference at issue was Defendant's criminal record, his presence at the conference would have had a reasonably substantial relation to his opportunity to defend. We disagree. Defendant's attorney was presumably familiar with Defendant's record, and hence there was no need for Defendant to be present. We therefore find no error. *See id.*

at 212, 410 S.E.2d at 838 (" '[A] bench conference, attended by appellant's counsel and called to discuss an evidentiary matter relative to appellant's own cross-examination, is not a critical stage of the trial proceedings at which appellant has a right to be present.' " (quoting *United States v. Vasquez*, 732 F.2d 846, 849 (11th Cir. 1984) (per curiam))).

## II.

**[2]** Defendant argues that the court's admonishment during the bench conference discussed above constituted an expression of opinion by the trial court that prejudiced Defendant before the jury. Thus, he contends that the court should have granted his subsequent motion for a mistrial.

By statute, "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (1999). This Court has explained that "[t]rial judges . . . have a duty of absolute impartiality and must avoid even the 'slightest intimation of an opinion,' as 'every defendant in a criminal case is entitled to a trial before an impartial judge and an unbiased jury.' " *State v. Baldwin*, 141 N.C. App. 596, 602, 540 S.E.2d 815, 820 (2000) (quoting *State v. Sidbury*, 64 N.C. App. 177, 178-79, 306 S.E.2d 844, 845 (1983)) (citation omitted). However, "not every expression of opinion by the trial court constitutes prejudicial error. . . . In a criminal case, reversible error results where the jury may rationally infer from the trial judge's action an expression of opinion as to the defendant's guilt or the credibility of a witness." *Id.*

Here, Defendant claims that the judge conveyed to the jury an opinion that Defendant was a "wrongdoer." However, two of three witnesses called by Defendant after the incident testified that they neither heard nor saw the court admonish Defendant. The third witness testified only that the judge raised his voice, used a "stern" tone of voice, and "made some frowns in his forehead and he had a stern look on his face." We do not believe the jury could rationally infer from the judge's action that the judge was of the opinion that Defendant was guilty. Furthermore, the willingness of the jury to acquit Defendant on the trespassing charge and to convict Defendant of the lesser charges of assault does not support Defendant's claim that the jury was led to believe he was generally a "wrongdoer," but instead shows that the jury based its verdicts on the evidence in the case. We affirm the court's denial of Defendant's motion for mistrial.

## III.

**[3]** Next, Defendant contends that the trial court erred in denying his motion, at the close of all the evidence, to dismiss the assault charges due to insufficiency of the evidence. On review of a trial court's denial of a defendant's motion to dismiss for insufficiency of the evidence, we must "review the evidence introduced at trial 'in the light most favorable to the State to determine if there is substantial evidence'" of each element of the offense. *Baldwin*, 141 N.C. App. at 604, 540 S.E.2d at 821 (quoting *State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982)). "Substantial evidence is that which a reasonable juror would consider sufficient to support the conclusion" that each element of the offense has been proven. *Id.*

Defendant first argues that there was insufficient evidence to support the charges of assault with a deadly weapon inflicting serious injury, because there was insufficient evidence that he inflicted "serious injury" on Carden, Moche, and Murphy. Although Defendant was charged with three counts of assault with a deadly weapon with intent to kill inflicting serious injury, he was actually convicted of assault with a deadly weapon inflicting serious injury only upon Carden. He was convicted of the lesser charge of assault with a deadly weapon upon Moche and Murphy. Thus, any error with respect to the charges involving Moche and Murphy was harmless.

Defendant was convicted of violating N.C.G.S. § 14-32(a), but he argues that the definition of "serious injury" given in N.C. Gen. Stat. § 14-32.4 (1999) governs § 14-32(a) as well. The General Assembly did not define "serious injury" in § 14-32(a). Our Supreme Court has stated that the term

> means physical or bodily injury resulting from an assault with a deadly weapon with intent to kill. The injury must be serious but it must fall short of causing death. Further definition seems neither wise nor desirable. Whether such serious injury has been inflicted must be determined according to the particular facts of each case.

*State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962); *see also, e.g., State v. Hensley*, 90 N.C. App. 245, 248, 368 S.E.2d 208, 210 (1988) ("Whether serious injury has been inflicted must be determined according to the particular facts of each case and is a question for the jury.").

STATE v. POLAND

[148 N.C. App. 588 (2002)]

In 1996, the General Assembly enacted N.C.G.S. § 14-32.4, which states that "[u]nless the conduct is covered under some other provision of law providing greater punishment, any person who assaults another person and inflicts serious bodily injury is guilty of a Class F felony." Section 14-32.4 defines "serious bodily injury" as "bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization." Defendant argues that the legislature intended for this definition of "serious bodily injury" to supersede any definition of "serious injury" developed in case law pursuant to § 14-32(a). The State maintains that passage of § 14-32.4 had no effect on the definition of "serious injury" as developed in the earlier case law.

We need not resolve this issue as we find that, even under the definition in § 14-32.4, there was sufficient evidence that Carden suffered serious injury to send the question to the jury. Carden sustained one knife-wound that punctured his colon in two places and another that could have severed a major artery. He was in intensive care for four days. In response to the district attorney's questions regarding the effects of his injuries, Carden testified as follows:

Q. Are you suffering from any of the effects from that now?

[Defense objection, overruled]

A. Yes, sir. My rib and obviously disfigurement.

Q. The actual stab wounds that you had were not very bid [sic], were they?

A. No, sir.

Q. After surgery you have a big scar now?

A. Yes, sir.

Q. How about your right index finger?

A. I had either 27 or 28 stitches in my right index finger. Severed all the nerves, tendons, ligaments and everything on the inside of my finger.

Q. What is the condition of your finger now?

A. It will never straighten out again. I am limited with a grip on it.

The court then allowed Carden to show the scars on his finger and abdomen to the jury. A reasonable juror could likely consider this evidence sufficient to conclude that Carden's injuries created a "substantial risk of death," or caused "serious permanent disfigurement," or caused a "serious . . . permanent or protracted . . . impairment of the function of [a] bodily member." N.C.G.S. § 14-32.4.

[4] Second, Defendant argues that there was insufficient evidence supporting the assault charges because he clearly acted in self-defense. "The theory of self-defense entitles an individual to use 'such force as is necessary or apparently necessary to save himself from death or great bodily harm. . . . A person may exercise such force if he believes it to be necessary and has reasonable grounds for such belief.' " *State v. Moore*, 111 N.C. App. 649, 653, 432 S.E.2d 887, 889 (1993) (quoting *State v. Marsh*, 293 N.C. 353, 354, 237 S.E.2d 745, 747 (1977)) (alteration in original). An aggressor is not entitled to the defense. *See State v. Allred*, 129 N.C. App. 232, 235, 498 S.E.2d 204, 206 (1998) ("The right of self-defense is only available . . . to 'a person who is without fault, and if a person voluntarily, that is aggressively and willingly, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight, withdraws from it and gives notice to his adversary that he has done so.' " (quoting *Marsh*, 293 N.C. at 354, 237 S.E.2d at 747)). The State has the burden of proving that a defendant is not entitled to the defense. *See State v. Price*, 118 N.C. App. 212, 219, 454 S.E.2d 820, 824, *disc. review denied*, 341 N.C. 423, 461 S.E.2d 766 (1995).

Here, the State presented evidence both that Defendant was the aggressor and that Defendant used excessive force. The State's witnesses testified that Defendant charged back into the beach area after having been evicted, thereby starting the fight. Additionally, witnesses testified that Defendant wielded a knife, while the bouncers were all unarmed. At most, Defendant received a broken nose, a fractured finger, a sprained ankle, and some scrapes and bruises, while the evidence showed that several of the bouncers were hospitalized for the injuries they sustained. In the light most favorable to the State, we consider this evidence sufficient to support the conclusion that Defendant did not act in reasonable self-defense, either because he was the aggressor or because he used excessive force. Accordingly, the trial court did not err in denying the motion to dismiss.

IV.

**[5]** Defendant also argues that the trial court erred in failing to arrest judgment after the jury returned guilty verdicts on all the assault charges, because these guilty verdicts on the assault charges were inconsistent with the verdict of not guilty on the trespassing charge. Defendant argues that the acquittal on the trespassing charge establishes that the jury believed Defendant's testimony that he was pulled back into the beach area and did not himself instigate the fight. Thus, Defendant concludes, he established that he acted in self defense.

We hold that the court did not err in failing to arrest judgment. The jury could have both found that Defendant was not the aggressor and rejected his self-defense theory on the ground that he used excessive force. *Cf. State v. Skeels*, 346 N.C. 147, 151-52, 484 S.E.2d 390, 392 (1997) (assuming without deciding that verdicts must be consistent, positing reasoning by the jury that would result in consistent verdicts of guilty on murder and robbery charges, and holding that trial court's refusal to arrest judgment was not error). Accordingly, the trial court did not err in failing to arrest judgment on the assault convictions.

V.

**[6]** Finally, Defendant argues that the trial court erred in denying his motion to introduce into evidence a prior statement of T. J. House. House had given a statement to police officers prior to his arrest. When House refused to testify at Defendant's trial, invoking his Fifth Amendment rights, Defendant sought to have House's prior statement admitted into evidence under various exceptions to the hearsay rules; he argues on appeal only that the court erred in denying his motion on the basis of the "catch-all" exception of Rule 804(b). *See* N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) (1999).

The "catch-all" exception of Rule 804 provides that, if the declarant is unavailable to testify, then a statement that is not specifically covered by subsections (b)(1) through (b)(4) of the rule but has "equivalent circumstantial guarantees of trustworthiness," is admissible

> if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

*Id.* Our Supreme Court has held that the trial court must engage in a six-part inquiry in order to determine if the statement of an unavailable declarant is admissible under Rule 804(b)(5). *See State v. Triplett,* 316 N.C. 1, 8-9, 340 S.E.2d 736, 741 (1986). After finding that the declarant is unavailable to testify, the trial court must make the following determinations: (1) "that the proponent of the hearsay provided proper notice to the adverse party of his intent to offer it and of its particulars"; (2) that the statement is not covered by the four exceptions expressly listed in Rule 804(b); (3) that the statement has "equivalent circumstantial guarantee[s] of trustworthiness" as the four listed exceptions; (4) "that the proffered statement is offered as evidence of a material fact"; (5) that the statement "is more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts"; and (6) that admission of the statement will best serve the "general purposes" of the rules of evidence and "the interests of justice." *Id.* at 9, 340 S.E.2d at 741 (internal quotation marks omitted).

Defendant argues that the court failed to make sufficient findings, as required by *Triplett,* before refusing to admit House's statement. Assuming without deciding that the court erred in excluding the statement, Defendant fails to show how he was prejudiced. Defendant asserts in his brief that House's statement was necessary because "Mr. House had been present at the scene and had witnesses [sic] the activities of the people involved. The defendant called House to testify in order to corroborate [Defendant's] version of events and to clarify activities seen from his unique point of view." Defendant contends that the court's ruling "cost [him] in the war of credible witnesses pro and con since testimony of individuals present was the key in this case." However, Defendant called six witnesses who gave an account of the events that was consistent with Defendant's. Defendant did not include House's statement in the record on appeal and fails to identify the unique point of view that House's statement would have provided. Defendant thus fails to explain how House's statement would have contributed to his defense, other than providing one more description of the events in addition to the descriptions given by those witnesses who did testify. Therefore, we hold that there was no prejudicial error in the exclusion of this statement.

No prejudicial error.

Judges TIMMONS-GOODSON and TYSON concur.