An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1173

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

STATE OF NORTH CAROLINA

|  |  |
|---|---|
| v. | Cleveland County |
|  | Nos. 11 CRS 3314 |
| RAHUL RUMAR MACK, | 11 CRS 3315 |
| Defendant. |  |

Appeal by defendant from judgment entered 17 May 2013 by Judge Nathaniel J. Poovey in Cleveland County Superior Court. Heard in the Court of Appeals 9 April 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Douglas W. Corkhill, for the State.*

> *Glover & Petersen, P.A., by Ann B. Petersen, for defendant-appellant.*

GEER, Judge.

Defendant Rahul Rumar Mack appeals from a judgment entered based upon his convictions of habitual misdemeanor assault on a female and being a habitual felon. On appeal, defendant primarily argues that the trial court committed plain error in instructing the jury that if defendant was the "aggressor" when he struck the victim, he would not have been acting in self-

defense. Based on our review of the transcript, however, we hold that any error was invited by defendant. Regardless, the evidence was sufficient to support the "aggressor" portion of the instruction. We, therefore, find no error.

## Facts

The State's evidence tended to show the following facts. Defendant's mother owns and lives next door to a two-story house in Shelby, North Carolina ("the house"), which she rents to several tenants. The house has two apartments on the first floor and another two apartments on the second floor. On the first floor, the apartments are separated by an open common area that also has a staircase leading to the second floor apartments. The front door to the house opens directly onto the common area.

On 29 August 2011, defendant was living with his mother next door. From late afternoon into the evening, defendant was visiting tenants who were living in the house, including Bonnie Elliott, Melissa Thompson, Ms. Thompson's fiancé Christopher Carroll, and Melissa Moore. Ms. Elliott lived in one of the first floor apartments with Mr. Carroll and Ms. Thompson. Over the course of the evening, defendant became intoxicated and, at some point, left the house.

Defendant later returned and knocked on the door to the house. Ms. Elliott answered, and defendant told Ms. Elliott that he was having trouble getting into his mother's home and asked if he could sit on the porch steps. Ms. Elliott engaged defendant in a "calm" and "friendly" conversation on the front porch of the house for about 15 minutes before Ms. Elliott went back inside. Defendant later left, and Ms. Elliott returned to her apartment.

Defendant returned shortly thereafter and again knocked on the front door to the house. When Ms. Elliott answered, defendant asked her if he could sit inside on the steps leading up to the second floor. Ms. Elliott let defendant inside and went back into her apartment. Defendant was still intoxicated. Moments later, Ms. Elliott heard defendant yelling at Kashia, a second floor tenant, outside Ms. Elliott's apartment door. Defendant was inside the common area while Kashia was just outside the front door.

Ms. Elliott wanted to confront defendant, but she was afraid of becoming involved in an altercation with him while he was intoxicated. She opened her door and asked defendant what he was doing, and defendant responded that he was telling Kashia to go upstairs. Defendant then suddenly became angry, started yelling at Ms. Elliott, and ordered Ms. Elliott back into her

apartment. Ms. Elliott took a step toward defendant, although she did not hit, threaten, or strike him. Defendant then struck Ms. Elliott's face with his hand and grabbed her by her hair. Mr. Carroll came out of his apartment and separated defendant and Ms. Elliott, while Ms. Thompson called the police. Ms. Elliott went back into the apartment to grab a knife, but Ms. Thompson would not let her go back outside the apartment. Within about five minutes, Ms. Elliott's nose began bleeding, the police arrived, and defendant was arrested.

Defendant was indicted for habitual misdemeanor assault on a female and being a habitual felon. Defendant presented no evidence. He did, however, request an instruction on self-defense, relying upon Ms. Elliott's testimony that when she confronted defendant, she was already holding either a closed knife or a stick and that she believed defendant was reacting in self-defense.

The jury found defendant guilty of assault on a female. He had previously stipulated to having two prior convictions of assault on a female, making him guilty of habitual misdemeanor assault, a felony. Defendant then pled guilty to being a habitual felon. The trial court sentenced defendant to a mitigated-range term of 66 to 89 months imprisonment. Defendant timely appealed to this Court.

I

Defendant first argues that the trial court erred in excluding Ms. Elliott's testimony that she did not want defendant arrested and also in prohibiting reference to an affidavit Ms. Elliott signed prior to trial stating that she did not want defendant prosecuted. The trial court excluded this evidence under Rule 403 of the Rules of Evidence.

"'The determination of whether relevant evidence should be excluded under Rule 403 is a matter that is left in the sound discretion of the trial court, and the trial court can be reversed only upon a showing of abuse of discretion.'" *State v. Peterson*, 179 N.C. App. 437, 460, 634 S.E.2d 594, 612 (2006) (quoting *State v. Lanier*, 165 N.C. App. 337, 345, 598 S.E.2d 596, 602 (2004)), *aff'd*, 361 N.C. 587, 652 S.E.2d 216 (2007). Further, "[t]his Court will not intervene where the trial court has properly weighed both the probative and prejudicial value of the evidence and made its ruling accordingly." *State v. Maney*, 151 N.C. App. 486, 490, 565 S.E.2d 743, 746 (2002).

Defendant contends that evidence showing that Ms. Elliott did not want defendant arrested or prosecuted was relevant to prove "her belief that Defendant Mack was acting in self-defense." Generally, "[a]ll relevant evidence is admissible," N.C.R. Evid. 402, and "'[r]elevant evidence' means evidence

having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. However, relevant evidence may nonetheless "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." N.C.R. Evid. 403. "'Unfair prejudice,' as used in Rule 403, means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *State v. DeLeonardo*, 315 N.C. 762, 772, 340 S.E.2d 350, 357 (1986) (internal quotation marks omitted).

In this case, the trial court allowed Ms. Elliott to testify that, in her opinion, defendant "snapped." She was also allowed to testify that after defendant saw her with an object in her hand, "I guess he thought I was going to come after him or something I guess. He just reacted to it." She repeated that "[defendant] reacted to me stepping towards him and hit me in my face." Following this testimony, defense counsel asked Ms. Elliott on cross-examination: (1) "Is this a case where you went down to the magistrate's office and it's a self-initiated warrant so to speak?" and (2) "At that point in time when you interacted with the police, did you ask for [defendant] to be

arrested?"  The State objected to both questions, and the trial court sustained the objections.

At defense counsel's request, the trial court then held a voir dire hearing to determine whether defense counsel would be permitted to reference an affidavit Ms. Elliott had signed in September 2012 indicating that she had never wanted defendant to be prosecuted for striking her.  The trial court prohibited any reference to the affidavit and explained that "[i]n a case like this where you've got basically no eyewitnesses, whether or not the victim in the case wants to prosecute to me is extremely prejudicial."  Although acknowledging that the evidence could be relevant, the trial court concluded that "even if [the affidavit] is relevant, and I contend potentially it is[,] [i]t's far outweighed under 403 analyses [sic] by the danger of unfair prejudice."

The trial court explained that the affidavit might cause the jury to find defendant not guilty simply because Ms. Elliott did not want defendant arrested or prosecuted, which would be an improper basis for a verdict.  *See Martin v. Commonwealth*, 260 S.W.2d 663, 665 (Ky. Ct. App. 1953) ("The evidence which appellant argues the court erred in excluding was the joint affidavit of the owners of the bakery that they did not desire the commonwealth attorney to prosecute the case against

[defendant]. The court permitted this affidavit to be made a part of the record, but refused to let it be read to the jury or to let Mr. Ellison, one of the affiants, be interrogated as to it. Clearly, the court was correct in excluding the affidavit as it had no bearing on the guilt or innocence of accused but only expressed the desire of the owners of the property that he not be prosecuted.").

We do not believe, in this case, that the trial court was manifestly unreasonable in determining that the potential unfair prejudice outweighed any probative value of the evidence. Ms. Elliott not only provided all of the evidence supporting defendant's claim of self-defense, but was also allowed to testify regarding her belief that defendant thought he was acting in self-defense. Given the admission of that testimony, the trial court could reasonably conclude that the fact Ms. Elliott did not seek the arrest of defendant -- the son of her landlady and apparently someone with whom she was friendly -- was of limited probative value. To the extent that the excluded testimony suggested that she believed defendant was acting in self-defense, the evidence was cumulative.

As a result, the trial court reasonably concluded that the risk that the jury would rely upon the excluded evidence to decide the case on an improper basis substantially outweighed

the evidence's limited probative value. We, therefore, hold that the trial court did not abuse its discretion when excluding the evidence. *See State v. Owen*, 133 N.C. App. 543, 550-51, 516 S.E.2d 159, 165 (1999) (holding that trial court did not abuse its discretion in excluding relevant evidence under Rule 403, reasoning that "[t]he record reveals that the trial court conducted a *voir dire* hearing suggesting that it carefully weighed the probative value of the evidence against the danger of unfair prejudice to defendant" and that excluded evidence was cumulative).

## II

Acknowledging that he failed to object to the jury instructions given at trial, defendant also argues that the trial court committed plain error when it instructed the jury that defendant would not be justified in using self-defense if he was the "aggressor."

The trial court gave the following instruction:

> The right to use force extends only to such force reasonably appearing to the defendant under the circumstances necessary to protect the defendant from bodily injury or offensive physical contact.
>
> . . . .
>
> Furthermore, self-defense is justified only if the defendant was not the aggressor. Justification for defensive force is not present if the person who used defensive

force voluntarily entered into the fight or, in other words, initially provoked the use of force against himself.

Defendant contends that the State did not present any evidence tending to show that he was the aggressor and, therefore, the aggressor portion of the instruction should have been omitted.

We first address the State's contention that any error amounted to invited error. Our appellate courts have "consistently denied appellate review to defendants who have attempted to assign error to the granting of their own requests." *State v. Wilkinson*, 344 N.C. 198, 213, 474 S.E.2d 375, 383 (1996). It is well established that "[t]he defendant will not be heard to complain on appeal when the trial court has instructed adequately on the law and in a manner requested by the defendant." *State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991).

During the charge conference defense counsel requested that the trial court instruct on self-defense. In response to the trial court's request that he explain why he believed defendant was entitled to the instruction, defense counsel argued: "The self-defense instruction, 308.40, we can argue excessive force, *whether or not he was aggressive*, whether or not he was defending himself, but I think that that's a matter of province for the jury." (Emphasis added.) When the trial court asked

whether defense counsel wanted to add anything more, defense counsel responded: "[*The prosecutor*] *can argue in regards to the aggressor. She can argue all that in regards to the jury,* but it ought to be a matter for the jury and not the Court and not exclude self-defense. Given what she said, it should be an option for the jury to determine." (Emphasis added.)

The trial court granted defendant's request and gave the pattern jury instruction on self-defense, N.C.P.I., Crim. 308.40 (2013). Then, after the jury was instructed and dismissed to deliberate, the trial court asked whether either party had any requests for corrections. Defense counsel replied: "[W]e have no requests."

Defendant contends that the exchange between his trial counsel and the trial court constituted "merely a failure to object" to the "aggressor" language and should not preclude appellate review. However, in his exchange with the trial court, defense counsel not only requested the pattern jury instruction, but also twice argued to the trial court that whether defendant was the aggressor was a question of fact to be resolved by the jury. Counsel's argument was more than just a mere failure to object, and, therefore, we conclude that defendant invited any error and has waived appeal of this issue. *See State v. Basden*, 339 N.C. 288, 302-03, 451 S.E.2d 238, 246

(1994) ("Defendant in this case not only did not object to the challenged instruction, but in fact, requested it and stated he was satisfied with it. . . . Having invited the error, defendant cannot now claim on appeal that he was prejudiced by the instruction."); *State v. McPhail*, 329 N.C. 636, 643-44, 406 S.E.2d 591, 596 (1991) ("The defendant made no request for modification of the pattern jury instruction; in fact, he specifically requested the exact language of the charge that was given. . . . Since he asked for the exact instruction that he now contends was prejudicial, any error was invited error.").

Nonetheless, even if the issue were properly before us, we would hold that the trial court did not err in giving the "aggressor" portion of the self-defense instruction. Defendant does not dispute that the pattern jury instruction properly states the law of self-defense when it instructs that an aggressor is not entitled to rely upon self-defense. *See, e.g., State v. Poland*, 148 N.C. App. 588, 597, 560 S.E.2d 186, 192 (2002) (holding that "[a]n aggressor is not entitled to the defense [of self-defense]").

This Court has explained that, "[b]roadly speaking, the defendant can be considered the aggressor when [he] 'aggressively and willingly enters into a fight without legal excuse or provocation.'" *State v. Vaughn*, ___ N.C. App. ___,

___, 742 S.E.2d 276, 279 (2013) (quoting *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971)).  Our Supreme Court has held that "[a] person is considered to be an aggressor under this rule whenever he has wrongfully assaulted another or committed a battery upon him or when he has provoked a present difficulty by language or conduct towards another that is calculated and intended to bring it about."  *State v. Potter*, 295 N.C. 126, 144 n.2, 244 S.E.2d 397, 409 n.2 (1978) (internal quotation marks omitted).

Here, it is undisputed that when Ms. Elliott stepped out of her apartment, she interrupted defendant, while he was yelling at another tenant, to ask what defendant was doing.  Ms. Elliott testified that when defendant saw her, "[h]e got angry . . . [and] yelled at me and told me to go back into my apartment." When Ms. Elliott ignored the order and took one step toward defendant, defendant, according to Ms. Elliott, "snapped." Although Ms. Elliott testified that she did not hit or threaten defendant, defendant struck Ms. Elliott's face and then grabbed her by the hair.  Further, another witness, Ms. Thompson, testified that Ms. Elliott retreated into the apartment to grab a knife only after defendant struck her.  A jury could have inferred from this that Ms. Elliott either held only a stick in her hand or nothing at all when she stepped toward defendant.

Based on this evidence, a jury could have reasonably concluded that defendant "'provoked'" the conflict with Ms. Elliott "'by language or conduct towards'" her that was "'calculated and intended to bring it about.'" *Id.* (quoting *State v. Crisp*, 170 N.C. 785, 791, 87 S.E. 511, 514 (1916)). *See also State v. Effler*, 207 N.C. App. 91, 98, 698 S.E.2d 547, 552 (2010) ("The evidence presented at trial establishes that defendant was the aggressor. All relevant testimony tends to show that [the victim] did not initiate the altercation. [The victim] emerged from behind defendant's trailer only after defendant threw [the victim's] tools into the yard along with expletive-laden remarks."); *State v. Skipper*, 146 N.C. App. 532, 539, 553 S.E.2d 690, 694 (2001) (holding trial court properly refused to instruct on self-defense when there was "simply no evidence in the record which would support an inference that defendant did not enter into the altercation with [the victim] voluntarily" given that testimony at trial "was consistent that defendant verbally harassed [the victim] and the others and taunted them to 'come out in the road'").

The trial court, therefore, did not err when it gave the aggressor portion of the self-defense instruction. Since defendant makes no other argument, we hold defendant received a trial free of prejudicial error.

No error.

Judges STEPHENS and ERVIN concur.

Report per Rule 30(e).