STATE OF NORTH CAROLINA v. KENNETH RAY BROWNING

No. 7514SC703

(Filed 21 January 1976)

1. **Homicide § 9— self-defense — defense of home — applicability to curtilage — assault by occupant of same home**

    A person is not obliged to retreat when he is assaulted while in his dwelling house or within the curtilage thereof, whether the assailant be an intruder or another lawful occupant of the premises.

State v. Browning

2. **Homicide § 28— defense of home — killing within curtilage — occupant of same home — instructions**

   In a prosecution of defendant for the murder of his brother, defendant was entitled to an instruction that he had no obligation to retreat from or leave his own home in the face of an assault by his brother where there was evidence that the killing occurred within the curtilage of the home which defendant and his brother both occupied, and that at the time of the shooting the brother was advancing on defendant armed with a hammer and a knife.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 21 March 1975 in Superior Court, DURHAM County. Heard in the Court of Appeals 12 January 1976.

Defendant Kenneth Ray Browning was indicted for the murder of his brother, Billy Marvin Browning. On arraignment the State announced it would seek a conviction only for second degree murder. Defendant pled not guilty.

The State offered evidence to show that Billy Browning's death was due to complications resulting from a gunshot wound in his chest inflicted when defendant shot him during the course of a quarrel which occurred in the yard of their mother's home on the afternoon of 26 May 1974. Both men lived with their mother at the time. Immediately after the shooting Billy Browning was taken to the hospital where he subsequently underwent a series of operations. His condition became progressively worse until his death in the hospital on 25 August 1974.

The State offered the testimony of a Mrs. Rigsbee concerning a conversation she had with Billy Browning at the hospital. She testified:

"He (referring to Billy Browning) said Kenny and Lacy (another brother) was in the garage arguing and he got into it. He said Kenny come at him and he hit Kenny and knocked him down, and said Kenny went in the house and in a few minutes he called him. He said he picked up the hammer and went out to the garage door, and said Kenny started shooting at him. He said he dodged a couple of bullets, and he turned around to see which way Kenny was going to shoot at him next, and said he felt something go through his chest. He said, he threw the hammer and fell and that was all he remembered."

Defendant did not testify. He presented the testimony of his mother, who had witnessed the shooting. She testified that

she heard loud talking, "sounded like fussing," so she went out in the back, that she saw Billy had knocked Kenny to a sitting position in the door to the shed in the backyard, that she tried to talk to Billy but found she couldn't, that she looked around and Kenny was gone, and that she got out and Billy came out behind her. She testified:·

> "He (referring to Billy) had a hammer in one hand and a knife in the other. Then Kenny stepped out of the back kitchen door with that rifle. Kenny shot twice. Kenny was all bent over so it wouldn't hit Billy to hurt him, he shot down at his feet. . . . . While Kenny was firing the two shots, Billy just kept a-coming. He still had the knife and hammer in his hand. . . .

> "Then Kenny fired again, and Billy threw the hammer and hit Kenny on the arm and caused the gun to come up and shoot him in the shoulder."

The jury returned a verdict finding defendant guilty of voluntary manslaughter. Judgment was imposed sentencing defendant to prison for not less than seven nor more than twelve years. Defendant appealed.

*Attorney General Edmisten by Associate Attorney David S. Crump for the State.*

*Michael C. Troy, Robert A. Beason, and Sydenham Benoni Alexander, Jr. for defendant appellant.*

PARKER, Judge.

Defendant assigns error to the refusal of the court to give a requested instruction that defendant had no obligation to retreat from or leave his own home in the face of an assault by his brother. This assignment of error has merit.

> "Ordinarily, when a person who is free from fault in bringing on a difficulty, is attacked in his own home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self defense, regardless of the character of the assault, but is entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm. This, of course, would not excuse the defendant if he used excessive force

in repelling the attack and overcoming his adversary." *State v. Johnson,* 261 N.C. 727, 729, 136 S.E. 2d 84, 86 (1964).

This rule applies not only to attacks made upon a person within his own dwelling house, but applies as well to attacks made within the curtilage of the home. "And the curtilage of the home will ordinarily be construed to include at least the yard around the dwelling house as well as the area occupied by barns, cribs, and other outbuildings." *State v. Frizzelle,* 243 N.C. 49, 51, 89 S.E. 2d 725, 726 (1955); See Annot., 52 A.L.R. 2d 1458 (1957).

Evidence in the present case discloses that the fatal shooting occurred while defendant and his brother were in the backyard of their mother's home in which both resided. The argument and fight commenced while the two were in a structure, variously referred to as "little shack," "shed," or "garage," which defendant's mother testified was about twenty feet from the back door of the kitchen. The shooting occurred while decedent was advancing upon defendant at a point between the shack and the back door. We hold this to be "within the curtilage of the home" so as to make operative the rule that one attacked on his own premises is entitled to stand his ground under the decision in *State v. Frizzelle, supra.*

[1] We also hold that defendant was entitled to the benefit of an instruction concerning the above rule even though his assailant shared the same living quarters with him and had an equal right to be upon the premises. We find no decision of our Supreme Court on this point, and the decisions from other jurisdictions are not in agreement. Annot., 26 A.L.R. 3rd 1296 (1969). The rule which is supported by what we deem to be the better reasoned cases, and the rule which we now adopt, is that a person is not obliged to retreat when he is assaulted while in his dwelling house or within the curtilage thereof, whether the assailant be an intruder or another lawful occupant of the premises. This rule is consistent with, though it is not directly supported by, the decision of our own Supreme Court in *State v. Absher,* 220 N.C. 126, 16 S.E. 2d 656 (1941). In that case the defendant, a son-in-law of the home owner, was living with his in-laws by invitation of his father-in-law. A dispute arose between defendant and his brothers-in-law, who lived in the same dwelling. Defendant was ordered to leave by his mother-in-law. According to defendant's version, he undertook to do so

but before he could leave the premise a fight occurred during the course of which defendant killed one of his brothers-in-law. The trial court charged the jury that if they found that defendant refused to leave the premises when directed to do so, he became a trespasser, and that in such case the other members of the family had the right to use such force as would be reasonably necessary to evict him, and that defendant, as a trespasser, had no right to repel this force. Defendant was convicted of second degree murder. On appeal, our Supreme Court granted a new trial, the opinion pointing out that, although there was no question that defendant might have been ejected upon reasonable notice, to reduce him to the status of a trespasser *eo instanti* he was ordered out of the house was altogether inconsistent with any status which could arise under the evidence. The opinion of the Supreme Court, in awarding a new trial, said (p. 131) :

> "Whether the version of the defendant is true or not, it is in the evidence and cannot be ignored by the court. It demanded, at least as an alternative statement of the law, arising upon this phase of the evidence, that the court should have given the ordinary instructions with regard to the right of self-defense in case of assault where a person has the right to be."

In the case presently before us, neither the defendant nor his brother who assailed him was asked to leave the premises by their mother. Each was lawfully on the premises which was the home of each, and under the rule which we adopt each had the right to remain there and to defend himself.

[2]  In the present case not only was the defendant on his own premises but there was also evidence that at the time of the shooting his brother was advancing on him armed with a hammer and a knife. At no point in the charge did the court instruct the jury as to defendant's right to stand his ground. "Where there is evidence that defendant was on his own premises when he was assaulted, or that a felonious assault was being made upon a defendant without fault on his part, it is error for the court to fail to submit the question and to charge upon defendant's right to stand his ground without retreating." 4 Strong, N. C. Index 2d, Homicide, § 28, pp. 248, 249.

For the error noted, the defendant is entitled to a

New trial.

Judges HEDRICK and ARNOLD concur.