State v. Bennett

STATE OF NORTH CAROLINA v. CLICK LONZO BENNETT

No. 8320SC1018

(Filed 3 April 1984)

1. **Homicide § 28.4— lack of duty to retreat in own home—failure to instruct—defendant as aggressor**

    The trial court in a homicide and assault case did not err in failing to instruct on defendant's "lack of obligation to retreat when he is assaulted in his own home" where defendant's own evidence showed that he was the first person to resort to physical force and that he was thus not free from fault in bringing on the difficulty.

2. **Criminal Law § 163.1— insufficient objection to failure to charge**

    Defense counsel failed to "state distinctly that to which he objects" within the meaning of App. Rule 10(b)(2) so as to preserve for appellate review the trial court's failure to instruct that defendant could be found guilty of voluntary manslaughter on the basis of imperfect self-defense where defendant submitted a handwritten request that the court instruct "on voluntary manslaughter, involuntary manslaughter and self-defense," the trial court allowed the request and instructed on each of the three topics listed, the trial court inquired as to whether counsel had specific requests or corrections or additions to the charge, and defense counsel then asked "to preserve any differences" between the charge given and his written request.

3. **Criminal Law § 163— failure to instruct on imperfect self-defense—no plain error**

    The trial court's failure in a homicide case to instruct on imperfect self-defense did not constitute "plain error" where an examination of all the evidence leads to the conclusion that such error could not have had a probable impact on the jury's finding of guilt.

4. **Homicide § 19— ability to perceive life threatening situation—exclusion of expert testimony**

    The trial court in a homicide and assault case did not err in excluding expert psychiatric testimony offered by defendant to show that he possessed the ability to perceive accurately a life threatening situation where the State's evidence tended to show that defendant was never confronted with such a situation and that his actions were unprovoked, no issue was raised by the evidence as to defendant's normalcy, and the evidence thus had no tendency to prove a fact at issue in the case.

5. **Constitutional Law § 63— procedure of "death qualifying" jury—constitutionality**

    The procedure of "death qualifying" the jury did not violate defendant's constitutional rights.

APPEAL by defendant from *Lamm, Judge.* Judgment entered 5 March 1982 in Superior Court, ANSON County. Heard in the Court of Appeals 15 March 1984.

Defendant was charged in proper bills of indictment with the murder of Maggie Lee Bennett, his wife, the murder of Clissie B. Gaddy, his daughter, and with assault with a deadly weapon with intent to kill inflicting serious injuries on Carol Bennett, his daughter. At trial the State presented evidence tending to show the following:

Defendant and his wife had an argument on the afternoon of 4 October 1981, the day of the incident. Carol noticed a cut on her mother's face and loudly stated, "I don't want nobody to touch my momma." Defendant then "started at" her and, when Clissie pushed him away, told Carol he was going to "blow [her] brain out" and left the room. When defendant returned, he carried a .22 caliber rifle, pointed it at his daughters and began to fire. Carol, hit in the upper lip by the second shot, was pushed out the door by her sister and ran to a neighbor's house. As Carol left the house, she heard a third shot and saw Clissie fall. Seven shots were fired in all. When police arrived at the scene, they found the bodies of Clissie Gaddy and Maggie Bennett. Clissie had been shot twice and Maggie three times.

Defendant offered evidence tending to show that he had "discipline problems" with Carol, that his sixteen-year-old daughter was difficult to control and subject to "spells [when] she was just like the devil," and that Carol had threatened him with a knife approximately two weeks prior to the incident. On 4 October 1981 Carol became upset when her father told her not to "mess with [his] food," and an argument ensued. Defendant "slapped at" Carol, who then went into her bedroom. Carol came back into the room holding a knife and told defendant she was going to kill him. As she approached, defendant picked up a rifle and fired. Defendant testified that he acted in fear of Carol, that he had no intention of shooting Maggie or Clissie, and that he did not know how many times he fired or what he hit. He also testified that his daughter Carol was strong, that he was disabled by asthma and hypertension, and that he was afraid of her.

Defendant was found guilty of the second degree murders of Maggie Bennett and Clissie Gaddy and of assault with a deadly

weapon inflicting serious injury on Carol Bennett. After a sentencing hearing the trial judge found aggravating and mitigating factors and, upon a finding that factors in mitigation outweighed factors in aggravation, imposed prison sentences of 2 years in the case wherein defendant was found guilty of assault with a deadly weapon inflicting serious injury, 13 years in the case wherein defendant was found guilty of the second degree murder of his daughter, and 13 years in the case wherein defendant was found guilty of the second degree murder of his wife, the sentences to run consecutively. The sentence imposed in each case was less than the statutory presumptive term. Defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Richard H. Carlton and Associate Attorney Victor H. E. Morgan, Jr., for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender David W. Dorey, for defendant, appellant.*

HEDRICK, Judge.

[1] Defendant first assigns error to the court's refusal to instruct the jury "concerning a defendant's lack of obligation to retreat when he is assaulted in his own home." Defendant relies on cases in which the appellate courts of this State have found reversible error in the refusal of the trial court to give the requested instruction when raised by the evidence. *See State v. Frizzelle*, 243 N.C. 49, 89 S.E. 2d 725 (1955); *State v. Pearson*, 288 N.C. 34, 215 S.E. 2d 598 (1975); *State v. Browning*, 28 N.C. App. 376, 221 S.E. 2d 375 (1976). Defendant fails to note, however, the equally well-settled requirement that the defendant be "free from fault in bringing on a difficulty." *Frizzelle*, 243 N.C. at 51, 89 S.E. 2d at 727; *Pearson*, 288 N.C. at 42, 215 S.E. 2d at 603; *Browning*, 28 N.C. App. at 378, 221 S.E. 2d at 377. In the instant case defendant's own testimony was that he responded to his daughter's verbal aggression by attempting to slap her. Because defendant's own evidence shows that he was the first person to resort to physical force, we cannot say the evidence shows that defendant "was free from fault in bringing on [the] difficulty." It follows that he was not entitled to an instruction on his "lack of obligation to retreat when he is assaulted in his own home." The assignment of error is overruled.

Defendant next contends that the court erred in failing to instruct the jury "that it could find the defendant guilty of voluntary manslaughter on the basis of imperfect self-defense" where there was "substantial evidence from which the jury could infer that defendant used excessive force or that he was the initial aggressor."

[2] Before discussing the merits of defendant's argument, we must first consider whether he has properly preserved the question for appellate review. Rule 10(b)(2), North Carolina Rules of Appellate Procedure, provides in pertinent part:

> No party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection. . . .

In the instant case, defendant submitted a handwritten list of requested instructions, Item No. 5 of which stated: "Instruct on voluntary manslaughter, involuntary manslaughter and self-defense." The record shows that Judge Lamm "allowed" defendant's request for instructions under Item 5 and in fact instructed on each of the three topics listed. After Judge Lamm instructed the jury, he inquired as to whether counsel had "specific requests or corrections or additions to the charge." The record shows that defense counsel then asked "to preserve any differences" between the charge given and "the written request . . . previously submitted." Defendant now concedes that "the instruction as requested could have been more clearly stated" but asks that this Court view the requested instruction and subsequent "preservation of differences" as sufficient compliance with Rule 10(b)(2). This we cannot do. Rule 10(b)(2) is clear in its requirement that counsel "stat[e] distinctly that to which he objects." It is well acknowledged that the purpose of the Rule is "to encourage the parties to inform the trial court of errors in its instructions so that it can correct the instructions and cure any potential errors before the jury deliberates on the case and thereby eliminate the need for a new trial." *State v. Odom,* 307 N.C. 655, 660, 300 S.E. 2d 375, 378 (1983). To find, as defendant requests, sufficient compliance with Rule 10(b)(2) on these facts would frustrate the purpose of the Rule. Our decision in this regard is bolstered by the fact that Judge Lamm "allowed" defendant's request for this in-

struction, according to his notes in the margin, and proceeded to instruct on the three topics listed. It thus seems likely that the court did not understand defendant's request to be one for instruction on imperfect self-defense as it relates to voluntary manslaughter.

**[3]**  Defendant asks in the alternative that we "find the failure of the trial court to give an instruction on imperfect self-defense to be plain error." The so-called "plain error" rule was adopted by our Supreme Court in *State v. Odom*, in acknowledgment of "the potential harshness of Rule 10(b)(2)." *Id.* "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E. 2d at 378-79. We thus turn our attention to "the whole record."

The evidence presented by the State in the instant case suggested that defendant had an altercation with his teenage daughter which led to his threatening her and then firing at her with a semi-automatic rifle. Maggie Bennett was shot three times and Clissie Gaddy was shot twice. None of the victims were armed. Testimony by Carol indicating that defendant did not act in self-defense was corroborated by Christopher Gaddy, a nine-year-old child, who witnessed the incident.

Defendant testified that he acted in self-defense, and he introduced statements made by him after the incident that were consistent with his trial testimony. Family members and neighbors testified that defendant had a good reputation in the community. Defendant's character and credibility were significantly impeached, however, by evidence that he shot a man with a twenty-two caliber pistol in 1970, that he pleaded guilty to assault on a female, his wife, in 1972, that he was convicted of carrying a concealed weapon in 1977, and that he "paid the costs of court" in a case involving assault and battery on his daughter in 1977. Our examination of all the evidence leads us to conclude that the instructional error complained of cannot be said to have "had a probable impact on the jury's finding of guilt." This assignment of error is thus overruled.

**[4]**  By Assignment of Error No. 5 defendant contends:

The court erred in excluding the testimony of Drs. Brad-bard and Rose concerning the existence and likely effect of defendant's organic brain damage on his perceptions and conduct on the day of the shooting, because this evidence was admissible and relevant to the issue of whether defendant was, in fact, motivated by a reasonable apprehension of death or great bodily harm when he fired his rifle at Carol Bennett.

The record shows that defendant offered into evidence the testimony of Dr. Steven Bradbard, a clinical psychologist, and Dr. Selwyn Rose, a psychiatrist, concerning the results of psychiatric and psychological evaluations performed on defendant. When the State objected to admission of this testimony, the court conducted a *voir dire* and then ruled the testimony inadmissible based on its finding that the offered evidence was "not competent or relevant at the guilt phase of a trial of these matters."

Defendant contends the offered evidence was both competent and relevant because it tends to show "that under the facts, as he describes them, on October 4, 1981, he would be likely to perceive and act in a straight forward and uncomplicated fashion." Defendant goes on to say:

Defendant's position was not that his culpability should be reduced because he lacked the intelligence to fully appreciate the criminality of his act. To the contrary, defendant was attempting to prove that he was confronted by an apparently life threatening situation on the day in question, that he perceived it as such, and that his act of force was, in fact, motivated by that perception.

"[E]vidence is relevant if it has any logical tendency to prove a fact at issue in a case." *State v. Pate*, 40 N.C. App. 580, 585, 253 S.E. 2d 266, 270, *cert. denied*, 297 N.C. 616, 257 S.E. 2d 222 (1979). We agree with the trial court that the offered evidence had no tendency to prove a fact *at issue* in the case. The State introduced no evidence calling into question defendant's ability to accurately perceive a life-threatening situation. Indeed, the State's position was that the evidence tended to show that defendant was never confronted with such a life-threatening situation, and that his actions were unprovoked. Because no issue had been raised by the evidence as to defendant's normalcy, we believe defendant was not entitled to introduce expert testimony tending only to

show that he possesses the ability to perceive accurately and behave accordingly. We thus hold the assignment of error to be without merit.

[5]  Defendant's final contention is that the court erred in allowing the State to "death qualify" the jury. Defendant acknowledges that our Supreme Court "has consistently and recently rejected the claim" that this procedure violates the constitutional rights of criminal defendants. *State v. Avery*, 299 N.C. 126, 261 S.E. 2d 803 (1980); *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203 (1982). We find these cases dispositive of the issue and overrule the assignment of error.

No error.

Judges HILL and JOHNSON concur.