STATE OF NORTH CAROLINA v. MARTHA LYNN HEARN

No. 8726SC832

(Filed 1 March 1988)

**Homicide § 28.4— self-defense—no duty to retreat in own home—instruction required**

The trial court in a murder case erred in refusing to instruct the jury that defendant had no duty to retreat before using deadly force to repel an attack against her in her own home where defendant presented evidence tending to show that defendant and decedent resided in the same house; defendant loaded a gun in fear that decedent's father was coming to the house to "cut" her; defendant saw decedent approaching the house with what appeared to her to be a pipe or tire iron in his hand; decedent and defendant argued and decedent threatened defendant's life; and defendant shot decedent as he was coming at her with a pipe raised in his hand.

APPEAL by defendant from *Sitton (Claude S.), Judge*. Judgment entered 9 March 1987 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 8 February 1988.

Defendant was indicted on 13 October 1986 for the first degree murder of David Eugene Martin. Defendant was tried and convicted of the felony of second degree murder. She appeals from the judgment entered thereon.

The State's evidence tends to show that prior to his death, the decedent and his girlfriend, Tina Pennex, lived at the home of decedent's grandmother, Maggie Martin. Defendant, her boyfriend, Donald Martin (decedent's uncle), and their two children also lived with Maggie Martin.

The State's evidence further tends to show that the events which led to David Martin's death on the evening of 13 August 1986 began in the late afternoon hours of that same day. Decedent and his parents, Eugene and Gloria Martin, had gone to the Bedford Lounge, a bar near their home, around 5:00 in the afternoon. While there, they encountered decedent's uncle, Roger Mar-

tin. Roger and decedent engaged in a fight. Eugene Martin entered the fight in his son's behalf and stabbed Roger. The stab wound was non-debilitating, and Roger left to go to Maggie Martin's house.

Shortly afterwards, decedent, accompanied by Tina Pennex and another friend, Mike Tyree, arrived at Maggie Martin's house. The fight between Roger and David resumed outside of the residence. During the fight, Tina went into the house to telephone her mother. Defendant prevented Tina from making the call and accused her of trying to call Eugene Martin. A fight ensued between the two women. Subsequently, both fights ended, and David and his friends decided to leave. As they were leaving defendant threatened to kill David if he returned.

Decedent returned to the Bedford Lounge where his mother advised him to move back in with her and Eugene. Eugene called Maggie Martin to determine whether Roger had left. She advised him that Roger had indeed left. Eugene then told his mother, Maggie, that David was on his way to her house and that if David was harassed, Eugene would come over and "kick some ass."

David arrived at Maggie Martin's house accompanied again by Tina Pennex and Mike Tyree. He went into the house and then to his bedroom to pack some clothes. Defendant stood just outside David's bedroom and exchanged angry words with him. She then raised a gun which she had previously taken from a dresser in her bedroom and shot David. He died as a result of the gunshot wound before the ambulance or police arrived.

Defendant testified on her own behalf that she never threatened to kill decedent. She further testified that she overheard Maggie Martin's telephone call with Eugene and gathered from the conversation that Eugene was on his way over to "cut" someone. Defendant became scared and loaded the gun which Donald Martin kept in their bedroom. When David arrived and approached the house, defendant saw that he had something in his hand. She retrieved the gun hoping it would deter any confrontation with David. David came into the house and went to the bedroom. He began arguing with defendant about the earlier fight between defendant and Tina and threatened to kill defendant. David then raised his hand in which he held an iron pipe. He

stepped toward defendant and the gun she was holding fired. Defendant testified that she did not remember firing it.

There was conflicting testimony at trial as to whether David Martin had any type of pipe or weapon in his hand when he entered the residence or whether he threatened defendant at all. Witnesses present either during or after the shooting testified that they did not see an iron pipe, although there was testimony that David did have something in his hand when he entered the house. Police who arrived soon after the incident testified that on an initial inspection of the crime scene they found no weapon or iron pipe but a subsequent inspection revealed a metal pipe on the bed beside decedent's body. There were no fingerprints or bloodstains on the pipe.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Marc D. Towler, for defendant-appellant.*

SMITH, Judge.

By her only assignment of error, defendant contends that the trial court erred in refusing to instruct the jury that defendant had no duty to retreat before using deadly force to repel an attack against her when there was evidence that defendant was in her own home. We agree.

In regard to the duty to retreat our courts have stated:

[W]hen a person who is free from fault in bringing on a difficulty, is attacked in his own home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self-defense, regardless of the character of the assault, but is entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm. This, of course, would not excuse the defendant if he used excessive force in repelling the attack and overcoming his adversary.

*State v. Johnson*, 261 N.C. 727, 729-730, 136 S.E. 2d 84, 86 (1964). This rule applies even when both defendant and victim reside in

the same dwelling. *State v. Browning*, 28 N.C. App. 376, 221 S.E. 2d 375 (1976).

In this case there was testimony as follows: 1) defendant and decedent resided in the same house; 2) defendant loaded a gun in fear that decedent's father was coming to the house to "cut" her; 3) defendant saw decedent approaching the house with what appeared to her to be a pipe or tire iron in his hand; 4) decedent and defendant argued and he threatened defendant's life; and 5) defendant shot decedent as he was coming at her with a pipe raised in his hand. " 'Where there is evidence that defendant was on [her] own premises when [she] was assaulted . . . without fault on [her] part, it is error for the court to fail to submit the question and to charge upon defendant's right to stand [her] ground without retreating.' " *Browning*, 28 N.C. App. at 380, 221 S.E. 2d at 378, *quoting* 4 Strong, N.C. Index 2d, Homicide, Sec. 28, pp. 248, 249.

The State contends that the trial court's refusal to instruct the jury that there was no duty to retreat was proper because there was overwhelming evidence to indicate that defendant was the initial and *only* aggressor in this incident. We do not agree with the State's contention. While there was evidence presented tending to show that defendant was the initial aggressor, there was also evidence that decedent was the aggressor and defendant was protecting herself. Such conflicts in evidence are for the jury to resolve. *See State v. Wagoner*, 249 N.C. 637, 107 S.E. 2d 83 (1959).

In reaching our conclusion here, we recognize our decision in *State v. Bennett*, 67 N.C. App. 407, 313 S.E. 2d 277 (1984), in which we held that a trial court's refusal to instruct the jury that there was no duty to retreat was not in error because there was evidence that defendant was the initial aggressor. We distinguish that case on the facts. There, unlike here, the evidence was uncontradicted. Defendant himself testified that he slapped the victim first before she allegedly assaulted him. Here, there was conflicting evidence as to who was the aggressor. When there is evidence that defendant was properly defending herself in her own home, then the trial court must instruct the jury that there was no duty to retreat. *Browning, supra.* In this case, the trial court was in error and defendant is entitled to a new trial.

New trial.

Chief Judge HEDRICK and Judge BECTON concur.