STATE OF NORTH CAROLINA v. GARLAND SCOTT BEAL

No. COA06-19

(Filed 2 January 2007)

**1. Assault— deadly weapon inflicting serious injury— no duty to retreat from assault—instruction should have been given**

The trial court should have given an instruction that defendant had no duty to retreat from the victim's assault on him, if his version of events is believed. The victim and defendant wound up in a "sword fight" with a pitch fork and machete after an argument broke out while they were drinking at the trailer where they lived and the victim asked defendant to leave. The evidence, viewed in the light most favorable to defendant, supports a conclusion that defendant was faced with a deadly assault and responded with deadly force.

**2. Evidence— propensity for violence—context of ensuing fight—admissible**

There was no error in a prosecution for assault with a deadly weapon inflicting serious injury in allowing the victim, who had known defendant since childhood, to testify that defendant became violent when drinking. The testimony was offered to provide a context for the fight which ensued after the victim asked defendant to leave rather than to prove that defendant acted in conformity with a violent disposition. N.C.G.S. § 8C-1, Rule 404(b).

Appeal by defendant from judgment entered 15 August 2005 by Judge W. Russell Duke, Jr. in Lee County Superior Court. Heard in the Court of Appeals 11 October 2006.

*Attorney General Roy Cooper, by Assistant Attorney General M. Elizabeth Guzman, for the State.*

*Adrian M. Lapas for defendant-appellant.*

CALABRIA, Judge.

Garland Scott Beal ("defendant") appeals from a judgment entered upon a jury verdict finding him guilty of assault with a deadly weapon inflicting serious injury. We reverse and remand for a new trial.

On 5 March 2004, defendant returned home to a mobile home he shared with the owner, Vernon McIver ("McIver"), a man he had known since childhood. Defendant rented a room from McIver for the previous two to four months at a cost of $50 per week. Upon returning home, defendant found his brother, Jeffrey Beal, in the mobile home with McIver. The two men were drinking beer. Defendant joined them, and the three men continued drinking and talking. Eventually an argument erupted between McIver and defendant. McIver asked defendant to leave and defendant initially refused. Upon defendant's refusal, McIver walked across the street to his grandmother's home and called the police.

Defendant testified that he and his brother heard the call over a police scanner in the mobile home, and that after hearing the call he gathered his belongings and started to leave. Defendant testified that as he was coming out the front door, McIver returned and confronted him with a pitchfork. "[H]e juked at me and told me that I wasn't going anywhere now. That I was going to stay there and wait for the law," defendant testified.

Defendant testified that he retreated into the house and retrieved a machete McIver kept underneath the couch, then returned to confront McIver with it. "I went to the front door, and we proceeded to a sword fight with the [pitchfork and machete]," defendant stated. Defendant testified that the two fought until he knocked McIver off balance. Defendant stated that he then threw the machete from the step leading up to the trailer's front door. Defendant testified that he then started to leave but tripped over something in the yard. When he rolled over to retrieve his belongings, McIver was standing over him with the pitchfork and began stabbing him with it. "When he would jab, I would roll," defendant stated. Defendant testified that McIver swung the pitchfork and struck him, breaking off the pitchfork's handle. He claimed to have suffered minor injuries from the altercation. Defendant's brother provided testimony supporting defendant's version of events.

McIver testified to a different version of events. He testified that after defendant became argumentative, he told defendant to leave. When defendant refused, McIver walked across the street and used his grandmother's phone to call the police, then returned to the mobile home he shared with defendant. He testified that the police did not respond and defendant was becoming more argumentative, so he again walked across the street and called the police. "[W]henever I come back the second time, the door swung open and he jumped out

with that machete," McIver stated. "[He] hit me in the top of the head, and knocked me to the ground. And there was a pitchfork lying there, and he was getting ready to come down on me again. And that's when I poked at him with the pitchfork, and he turned and run for the woods."

Defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury. The jury returned a verdict finding him guilty of the lesser offense of assault with a deadly weapon inflicting serious injury, a class E felony. Superior Court Judge W. Russell Duke, Jr., entered judgment upon the jury verdict and sentenced defendant to 37 months to 54 months in the North Carolina Department of Correction. From the judgment entered upon the jury's verdict, defendant appeals.

**[1]** Defendant on appeal brings forth two assignments of error. Defendant initially argues that the trial court erred in refusing his request to instruct the jury that defendant had no duty to retreat from an assault within the curtilage of his own home. We agree.

"Where the defendant's or the State's evidence when viewed in the light most favorable to the defendant discloses facts which are 'legally sufficient' to constitute a defense to the charged crime, the trial court must instruct the jury on the defense." *State v. Marshall*, 105 N.C. App. 518, 522, 414 S.E.2d 95, 97 (1992). So we review the evidence in the light most favorable to defendant and determine whether the evidence presented supported defendant's proposed instruction that he had no duty to retreat. This requires us to first define the law of self-defense by a person in his own home.

> Ordinarily, when a person who is free from fault in bringing on a difficulty is attacked in his own home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self defense, regardless of the character of the assault, but is entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm.

*State v. Johnson*, 261 N.C. 727, 729-30, 136 S.E.2d 84, 86 (1964). The home has been held to extend to curtilage, including the yard around the dwelling. *State v. Frizzelle*, 243 N.C. 49, 51, 89 S.E.2d 725, 726 (1955).

In the case *sub judice*, defendant was a lawful resident of the dwelling where the altercation occurred. Although McIver was the

owner of the mobile home, defendant rented a room from McIver and was a lawful occupant of the premises. As such, defendant had no duty to retreat from an assault on the premises so long as he was not responsible for "bringing on the difficulty." This is so even though McIver was also lawfully possessed of the premises and likewise had no duty to retreat from an assault. "[A] person is not obliged to retreat when he is assaulted while in his dwelling house or within the curtilage thereof, whether the assailant be an intruder or another lawful occupant of the premises." *State v. Browning*, 28 N.C. App. 376, 379, 221 S.E.2d 375, 377 (1976).

Defendant argues that by confronting him and threatening him with a pitchfork, McIver assaulted defendant with a deadly weapon. As such, the defendant contends that he was entitled to retrieve a weapon of his own and defend himself and was under no duty to retreat from the assault. An assault is defined as "an overt act or attempt, with force or violence, to do some immediate physical injury to the person of another, which is sufficient to put a person of reasonable firmness in fear of immediate physical injury." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995). Here, defendant testified that as he attempted to leave his house, McIver confronted him in the doorway and "juked" or jabbed a pitchfork at him in a threatening manner, demanding he return to the home. The implication from such an act was clear: defendant would be stabbed with the pitchfork unless he immediately submitted and retreated back inside. This is an assault.

McIver, in defendant's version of events, was attempting to detain defendant until police arrived. Detention by a citizen of an individual suspected of criminal activity is allowed in limited situations, but no detention is allowed where the detaining citizen has no reason to believe a crime has been committed. Even where detention by a private citizen is allowed, the manner of the detention must be reasonable considering the offense involved and the circumstances of the detention. N.C. Gen. Stat. § 15A-404 (2005). "[A] private citizen should not be allowed to employ deadly force to detain a fleeing misdemeanant in circumstances under which an officer of the law could not have employed similar force to effect such an arrest." *State v. Wall*, 304 N.C. 609, 616, 286 S.E.2d 68, 73 (1982). Assuming *arguendo* that defendant was a trespasser, it would be unreasonable for McIver to detain a non-violent misdemeanant at the point of a pitchfork.

Further, our Courts have held that " 'no man by the show of violence has the right to put another in fear and thereby force him to

leave a place where he has a right to be.' " *State v. Price*, 271 N.C. 521, 526, 157 S.E.2d 127, 130 (1967) (quoting *State v. Martin*, 85 N.C. 508, 510 (1881)). Defendant argues that by extension, no man may forcefully prevent another man from leaving a place he has a right to leave. We agree with defendant's argument in this respect.

Our appellate courts have never been called upon to determine whether a pitchfork constitutes a deadly weapon, but our Supreme Court, in an ancient case, once upheld a conviction for assault where one of the defendants followed the victim and intimidated him by carrying a pitchfork. *State v. Rawles*, 65 N.C. 334 (1871). A deadly weapon is "an instrument which is likely to produce death or great bodily harm under the circumstances of its use . . . ." *State v. Joyner*, 295 N.C. 55, 64, 243 S.E.2d 367, 373 (1978). We have held that whether an object is a deadly weapon depends on how it is used. *State v. Parker*, 7 N.C. App. 191, 171 S.E.2d 665 (1970). Under this formulation, numerous objects have been held to be deadly weapons solely due to the manner in which they were used. A metal cane has been held to be a deadly weapon if used to strike a blow. *State v. Hensley*, 91 N.C. App. 282, 371 S.E.2d 498 (1988). Fire has been held to be a deadly weapon when used to burn an occupied dwelling. *State v. Riddick*, 315 N.C. 749, 340 S.E.2d 55 (1986). Fists have been held to be deadly weapons where the size of and condition of the parties merits such a holding. *State v. Grumbles*, 104 N.C. App. 766, 411 S.E.2d 407 (1991). Even a plastic bag has been held to be a deadly weapon when placed over a victim's head. *State v. Strickland*, 290 N.C. 169, 225 S.E.2d 531 (1976).

In defendant's version of events, McIver confronted him with the pitchfork and threatened him with it, forcing him back inside the mobile home. Defendant retreated into the home and retrieved a machete, then again attempted to leave the residence, which he had a right to do. Again he was confronted by McIver, who was blocking the door and holding the pitchfork so as to threaten defendant with injury if he attempted to exit the mobile home. In order to use a deadly weapon in self-defense, a defendant must be placed in reasonable fear of imminent death or serious bodily harm. *State v. Norman*, 324 N.C. 253, 378 S.E.2d 8 (1989).

Here, defendant, according to his testimony, was assaulted when initially confronted by McIver and was again assaulted when he returned and tried to exit a second time. That in the interval he withdrew and retrieved a weapon does not negate the show of deadly force by McIver on their first or second encounter. Nor does it make

defendant responsible for "bringing on the difficulty," since the evidence in the light most favorable to defendant shows that McIver was the first to resort to violence. At most, defendant was responsible for bringing on the argument, but not the armed struggle that ensued. Defendant had the right to exit his own residence and any attempt to hold him prisoner in the mobile home under the threat of being stabbed by a pitchfork amounted to a show of deadly force. It is for the jury to determine whether McIver posed an imminent threat of serious bodily injury to defendant, but under the facts in the light most favorable to defendant, defendant was under no duty to retreat if assaulted in his own home.

In the instant case, there was evidence tending to show that defendant was the initial aggressor and evidence showing that he reacted to an assault by McIver. "Such conflicts in evidence are for the jury to decide." *State v. Hearn*, 89 N.C. App. 103, 106, 365 S.E.2d 206, 208 (1988). That there was evidence tending to disprove defendant's version of events is immaterial, so long as the evidence, viewed in the light most favorable to defendant, supported defendant's proposed instruction.

Here, the evidence, viewed in the light most favorable to defendant, supports a conclusion that defendant was faced with a deadly assault and responded with deadly force. As such, the jury should have been instructed that, if it believed defendant's version of events, defendant had no duty to retreat from the assault by McIver. The trial court erred by refusing to grant defendant's proposed instruction. Defendant is entitled to a new trial on this ground.

**[2]** Defendant next argues that the trial court erred by overruling his objection to testimony presented by the State in its case-in-chief that defendant becomes violent when drinking. We disagree.

Defendant argues that by overruling his objection and allowing character evidence to be introduced, the trial court violated N.C. Gen. Stat. § 8C-1, Rule 404 (2005). Rule 404 states, in relevant part, that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . ." *Id.*

On direct examination, McIver testified, "[Defendant] gets violent when he gets to drinking." Defense counsel immediately objected and moved to strike the remark. The trial court sustained the objection and ordered that the remark be stricken, stating, "Ladies and gentle-

men, at this point you're not to consider that." The following exchange then took place:

Q. Just tell us what actually happened?

A. Well, anyway, we got to fussing so I asked him to leave. He wouldn't. So it got rough. So I walked over to my grandma's to call the police.

Q. Hang on. Let me stop you just a second. Why did you ask him to leave?

A. Because he gets—I tell you, I just said, when he's drinking, he gets violent.

Defense counsel once again objected and moved to strike the remark, but this time the trial court overruled the objection and motion to strike.

The State argues that the evidence was not offered to prove that defendant acted in conformity with his allegedly violent character, but was instead offered to explain McIver's state of mind in asking defendant to leave his home. That is, the evidence was admitted for the purpose of explaining the chain of events which led McIver to call the police, which in turn led to the altercation. Accordingly, the State contends that the evidence was properly admitted under N.C. Gen. Stat. § 8C-1, Rule 404(b)(2005), which states in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

*Id.* This section has been interpreted as allowing a *res gestae* exception to Rule 404(a)'s prohibition on character evidence. *State v. Agee*, 326 N.C. 542, 391 S.E.2d 171 (1990). In *Agee*, our Supreme Court stated:

[A]dmission of evidence of a criminal defendant's prior bad acts, received to establish the circumstances of the crime on trial by describing its immediate context, has been approved in many other jurisdictions following adoption of the Rules of Evidence. This exception is known variously as the "same transaction" rule, the "complete story" exception, and the "course of conduct"

exception. Such evidence is admissible if it "forms part of the history of the event or serves to enhance the natural development of the facts." (internal citations omitted).

*Agee*, 326 N.C. at 547, 391 S.E.2d at 174.

Here, McIver testified that the altercation in question occurred after he asked defendant to leave their shared residence. When asked about the origin of their dispute, he stated that it began with an argument, and testified that he asked defendant to leave because he feared he would become violent, based on similar encounters in the past. This testimony was not offered for the purpose of proving that defendant acted in conformity with a violent disposition, but rather served to provide context for the ensuing fight. As such, its admission does not violate Rule 404's prohibition on character evidence.

The judgment is reversed and the case is remanded for a new trial.

New trial.

Judge HUDSON concurs.

Judge HUNTER concurs in the result only.

The Judges participated and submitted this opinion for filing prior to 1 January 2007.