STATE OF NORTH CAROLINA v. JAMES WILLIAM EFFLER

No. COA10-53

(Filed 7 September 2010)

**1. Homicide— voluntary manslaughter—jury instruction— defendant as the aggressor**

The trial court did not commit plain error when it instructed the jury that it could find defendant guilty of voluntary manslaughter if the jury found that defendant was the aggressor as there was sufficient evidence in the record of defendant being the aggressor.

**2. Homicide— voluntary manslaughter—jury instruction—no duty to retreat—no plain error**

The trial court did not commit plain error in a murder trial by failing to instruct the jury *ex mero motu* that defendant had no duty to retreat in the curtilage of his home. While the trial court's failure to include the instruction was erroneous, the jury would have reached the same verdict even if the jury had been instructed that defendant did not have a duty to retreat.

**3. Homicide— voluntary manslaughter—sufficient evidence— no error**

The trial court did not err by denying defendant's motion to dismiss the charge of voluntary manslaughter because the State presented sufficient evidence that defendant was the aggressor and that defendant used excessive force.

Appeal by defendant from judgment entered 14 September 2009 by Judge Bradley B. Letts in McDowell County Superior Court. Heard in the Court of Appeals 26 May 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General James A. Wellons, for the State.*

*Winifred H. Dillon for defendant appellant.*

HUNTER, JR., Robert N., Judge.

James William Effler ("defendant") appeals as a matter of right from his conviction for voluntary manslaughter. On appeal, defendant argues: (1) that the trial court committed plain error when it instructed the jury that it could find defendant guilty of voluntary manslaughter if the jury found that defendant was the aggressor, where the record is void of any evidence that defendant was the aggressor; (2) that the trial court committed plain error when it failed to instruct the jury *ex mero motu* that defendant had no duty to retreat; and (3) that the trial court erred by denying defendant's motion to dismiss because the State failed to present sufficient evidence that defendant was the aggressor or that defendant used excessive force. After review, we hold that the trial court's instructions to the jury did not constitute plain error, and that sufficient evidence was presented that defendant was the aggressor and/or used excessive force. As such, we find no error.

**I. Factual and Procedural Background**

On 7 September 2009, defendant was tried before a jury on an indictment charging him with first-degree murder in McDowell County Superior Court. Defendant entered a plea of not guilty.

At trial, the State's evidence tended to show the following: Defendant lived in a camper parked on his mother's property beside her home. Defendant shared the camper with his girlfriend and several of his displaced acquaintances. The victim, Dan Michael Brown ("Brown"), had been a close friend of defendant for over fifteen years. Prior to his death, Brown had been living with defendant for

STATE v. EFFLER

[207 N.C. App. 91 (2010)]

several months due to strained family relations and a recent breakup with his girlfriend. Both defendant and his mother voiced concerns that Brown needed to seek alternate living arrangements and find employment. Defendant also complained that the individuals in his home needed to leave because they were not assisting him financially.

On the morning of 27 November 2007, Thomas Thompson ("Thompson"), defendant's employer, arrived at defendant's residence to transport defendant, Wayne Elliott, and Tim Edwards to the jobsite where they had been working. Thompson allowed defendant to drive his 1990 Ford Explorer, because defendant knew a shorter route to the jobsite. Before leaving, defendant left Brown a note informing Brown that he would need to find somewhere else to stay, or find a job to assist defendant and his mother financially.

Approximately twenty minutes after defendant left for work Brown read defendant's note and became extremely agitated. Brown and Destini Rhodes ("Rhodes"), defendant's girlfriend, argued briefly, leaving Rhodes upset and crying. Rhodes exited the camper and began to call defendant repeatedly in an effort to get defendant to return to the camper and address Brown. Rhodes told defendant that she was not comfortable staying in the camper with Brown. Defendant instructed Rhodes to take her belongings and a baseball bat into his mother's home.

After speaking with Rhodes, defendant aborted his trip to the jobsite and drove back to his residence. Thompson testified that defendant appeared worried and upset, and that defendant turned the car around very erratically. Defendant's speed and erratic driving prompted Thompson to tell defendant to "ease up on the car because it was already in bad shape." At trial, Thompson said that it took five or six minutes to get back to defendant's camper, while Elliott testified that it took approximately thirty to forty-five minutes.

After arriving at his residence, defendant exited the vehicle and threw Brown's tools in the yard. Elliott testified that defendant said, "here's your g-d tools if that's what you want" as he threw Brown's tools. Brown then came running from behind the camper with a baseball bat. Defendant reentered the driver's side of the vehicle. Elliott further testified that defendant placed the vehicle in reverse and "floored it," but the Explorer only traveled six to ten feet before defendant slammed on the brakes. Multiple witnesses, including Elliott, Thompson, Rhodes, and Edward testified that they observed Brown attempting to hit the vehicle's windshield and poke defendant

through an open window with the baseball bat. After Brown approached the vehicle, he was disarmed.

Sheriff Dudley Greene of the McDowell County Sheriff's Office testified that defendant, after being advised of his *Miranda* rights, stated that the following occurred. Defendant and Thompson exited the vehicle. Defendant attempted to take the baseball bat away from Brown; however, defendant said that he was unsure of who ultimately took the baseball bat away. At some point after Brown relinquished the bat, defendant stated that he stabbed Brown during the fight.

Rhodes and Edwards also testified at trial that defendant and Thompson attempted and succeeded in disarming Brown after exiting the vehicle. Thompson testified that he exited the vehicle and asked Brown to give him the bat, which Brown relinquished without struggle. However, Elliott testified that as Brown attempted to poke defendant, defendant grabbed the bat and pulled it inside the vehicle.

After exiting the vehicle, defendant began a fistfight with Brown in a field next to defendant's mother's home. During the fistfight, defendant grabbed the bat. Edwards testified that he observed defendant strike Brown in the legs with the baseball bat. Moreover, Thompson and Elliott testified that they observed defendant yelling at Brown throughout the fight. Elliott specifically testified that he saw defendant standing over Brown with the baseball bat yelling, "you should have just went—I told you to go the 'F' home. You should have just went home." Thompson's testimony supported that of Elliott and indicated that Thompson saw defendant standing over Brown screaming, "if he didn't stop he would double or triple his skull with it" (the baseball bat). Thompson further testified that he understood the statement to be an expression of anger.

As the fight progressed, Elliott testified that he yelled to defendant "that [Brown] had had enough." Elliott said that he tackled defendant in an attempt to pull defendant off Brown. Edwards also testified that he observed Elliott trying to restrain defendant and heard Elliott yelling at defendant to "quit, stop it." The fight ended with Brown lying on the ground. After the altercation ended, defendant, Edwards, Elliott, and Thompson reentered the vehicle and went to the jobsite. The bat and knife used in the fight were abandoned in close proximity to defendant's work site; however, both objects were later retrieved by the authorities. Defendant later admitted to Sheriff Greene that he disposed of the knife.

**STATE v. EFFLER**

[207 N.C. App. 91 (2010)]

Rhodes called law enforcement and emergency personnel to assist Brown who was injured and lying in the yard. According to Rhodes, before he left the scene, defendant told her to tell police that black men had injured Brown. Rhodes complied with defendant's request by informing police that three black men in a Dodge Neon had assaulted Brown, but stated that she did not know why. After law enforcement officials discovered Rhodes was not being truthful, she informed them that she had fabricated the story. Sheriff Greene testified that defendant gave a statement that he tried to calm Brown down and then stabbed him in the side and in the shoulder blade area of his back. Defendant did not tell Sheriff Greene why he stabbed Brown, and did not indicate that the stabbing was done in self-defense. Moreover, at trial, Edwards testified that when he asked defendant if defendant had cut Brown with a knife, defendant told Edwards that he poked or cut Brown to get him off him.

Brown was declared dead after being transported to the hospital. Dr. Patrick Eugene Lantz performed Brown's autopsy. During the autopsy, Dr. Lantz noted that Brown had been stabbed in the chest and in the back. Dr. Lantz testified at trial that the stab wound to the chest area "went into the heart muscle to a depth, from the skin surface down to the heart." The immediate cause of Brown's death was determined to be acute loss of blood.

Defendant did not put on any evidence or testify at trial. At the close of the evidence, the trial court granted defendant's motion to dismiss the charge of first-degree murder. The case was submitted to the jury on the following possible verdicts: (1) guilty of second-degree murder; (2) guilty of voluntary manslaughter; and (3) not guilty.

On 14 September 2009, defendant was convicted of voluntary manslaughter. The court sentenced defendant to 92 to 120 months' imprisonment. Defendant gave notice of appeal in open court.

## II. Jury Instructions

Defendant's first and second assignments of error assert that the trial court committed plain error by instructing the jury on the aggressor element and by failing to include instructions on the duty not to retreat. We disagree and conclude that the trial court did not commit plain error in so instructing the jury.

The trial court instructed jurors as follows:

> The defendant would not be guilty of any murder or manslaughter if he acted in self-defense as I have just defined it to be and if he was not the aggressor in bringing on the fight and did not use excessive force under the circumstances.

> If the defendant voluntarily and without provocation entered the fight, he would be considered the aggressor unless he thereafter attempted to abandon the fight and gave notice to the deceased that he was doing so.

> One enters the fight voluntarily if he uses toward his opponent abusive language, which, considering all of the circumstances is calculated and intended to bring on a fight. The defendant uses excessive force if he uses more force than reasonably appeared to him to be necessary at the time of the killing.

At the charge conference the presiding judge also noted areas of interest that both the State and defense should review.

> THE COURT: And then the only other area that I think that you might want to . . . review is, if you are looking at the pattern instruction . . . [i]t just says: If you find beyond a reasonable doubt that on or about the alleged date the defendant intentionally wounded the victim with a deadly weapon and that the defendant was the aggressor—and then I said—was the aggressor or used excessive force.

## A. Standard of Review

Defendant's failure to make a timely objection to the jury instructions requires this Court to review defendant's assignments of error under the plain error rule. *See State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). "The plain error rule applies only in truly exceptional cases." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). To find plain error this Court must review the entire record and "must be convinced that absent the error the jury probably would have reached a different verdict . . . that the error in question 'tilted the scales' and caused the jury to reach its verdict convicting the defendant." *Id.* at 39, 340 S.E.2d at 82 (citation omitted); *see also Odom*, 307 N.C. at 655, 300 S.E.2d at 378 (explaining plain error).

Moreover, our Supreme Court has held that, " '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *Odom*,

307 N.C. at 661, 300 S.E.2d at 378 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212, (1977)).

## B. Defendant as Aggressor

[1] Defendant first contends that the trial court committed plain error by instructing the jury that a defendant acting in self-defense is guilty of voluntary manslaughter if he was the aggressor in bringing on the fight, where the record contains no evidence that defendant was the aggressor. *See State v. Temples*, 74 N.C. App. 106, 109, 327 S.E.2d 266, 268 (1985). However, there is sufficient evidence in the record to suggest that defendant was indeed the aggressor, warranting the given instruction. As such, we conclude there was no error.

This State has consistently held that a killing may be entirely excused if, at the time of the killing, the following four elements are present:

> (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

> (3) defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

> (4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981). A defendant is guilty of at least voluntary manslaughter if he was the aggressor or used excessive force in the affray. *Id.* An individual is the aggressor if he " 'aggressively and willingly enters into a fight without legal excuse or provocation.' " *State v. Potter*, 295 N.C. 126, 144, 244 S.E.2d 397, 409 (1978) (quoting *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971)). "A person is considered to be an aggressor . . . when he has 'provoked a present difficulty by language or conduct towards another that is calculated and intended to bring it about.' " *Potter*, 295 N.C. at 144 n.2, 397 S.E.2d at 409 n.2.

STATE v. EFFLER

[207 N.C. App. 91 (2010)]

The evidence presented at trial establishes that defendant was the aggressor. All relevant testimony tends to show that Brown did not initiate the altercation. Brown emerged from behind defendant's trailer only after defendant threw Brown's tools into the yard along with expletive-laden remarks. Furthermore, in his brief defendant concedes that the act of throwing the tools in the yard could be construed by a reasonable jury as an act of provocation.

It is undisputed that "[a] person is entitled under the law of self-defense to harm another only if he is 'without fault in provoking, engaging in, or continuing a difficulty with another.' " *State v. Stone*, 104 N.C. App. 448, 451-52, 409 S.E.2d 719, 721 (1991) (quoting *State v. Hunter*, 315 N.C. 371, 374, 338 S.E.2d 99, 102 (1986) (citation omitted)). It is evident from the record that attempts were made to restrain defendant from continuing the altercation with Brown. Defendant discontinued the affray with Brown only after he had stabbed Brown who was unarmed. Additionally, defendant was also heard screaming expletives at Brown and seen standing over Brown with a baseball bat during the affray.

Sufficient evidence was presented for a reasonable jury to conclude that defendant was the aggressor and the trial court's instruction to the jury was not in error.

Moreover, absent the alleged error it is not probable that the jury would have reached a different verdict, as there is evidence that defendant used excessive force. *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (defining plain error). All relevant testimony indicates that Brown was unarmed when he was stabbed by defendant. Additionally, attempts were made to restrain defendant and get him off Brown. Defendant stated that he stabbed Brown, who was unarmed, in an effort to calm him down. The evidence clearly demonstrates that defendant used excessive force in the altercation when he stabbed Brown.

Therefore, we hold that the trial court did not commit error, much less plain error, in instructing the jury on the aggressor requirement.

**C. Duty Not to Retreat**

**[2]** Defendant next contends that the trial court committed plain error when it failed to instruct the jury *ex mero motu* that defendant had no duty to retreat. While the trial court's failure to include the instruction on no duty to retreat was erroneous, it was not plain error.

**STATE v. EFFLER**

[207 N.C. App. 91 (2010)]

Our Court has held that " '[w]here the defendant's or the State's evidence when viewed in the light most favorable to the defendant discloses facts which are "legally sufficient" to constitute a defense to the charged crime, the trial court must instruct the jury on the defense.' " *State v. Beal,* 181 N.C. App. 100, 102, 638 S.E.2d 541, 543 (2007) (citation omitted). Ordinarily, a person is not required to retreat when assaulted in his dwelling or within the curtilage thereof, " 'whether the assailant be an intruder or another lawful occupant of the premises.' " *Id.* at 102-03, 638 S.E.2d at 543-44 (quoting *State v. Browning,* 28 N.C. App. 376, 379, 221 S.E.2d 375, 377 (1976)). While the State does not contend that the trial court should have included the instruction that defendant had no duty to retreat (N.C.P.I., Crim. 308.10) in his charge to the jury, even absent a timely request from defendant, its omission was not plain error.

Defendant's second contention is much like that of the defendant in *State v. Morgan,* 315 N.C. 626, 340 S.E.2d 84 (1986). In *Morgan,* the defendant sought reversal of his first-degree murder conviction on the ground that the trial court committed plain error by failing to instruct the jury that the defendant was not obligated to retreat because he was at his place of business. *Id.* at 641, 340 S.E.2d at 94. Not unlike the defendant in *Morgan,* defendant Effler failed to submit a request for special jury instructions "to the effect that he had the right to stand his ground and repel force with force in his own home [or curtilage] if he were found not to be the aggressor." *Id.* at 642, 340 S.E.2d at 94. In that case, the North Carolina Supreme Court held that the failure to give the instruction did not constitute plain error.

The Court recognized that "[i]t has . . . been held that where supported by the evidence in a claim of self-defense, an instruction negating defendant's duty to retreat in his home or premises must be given even in the absence of a request by defendant." *Id.* at 643, 340 S.E.2d at 95 (citing *State v. Poplin,* 238 N.C. 728, 78 S.E.2d 777 (1953)); *State v. Ward,* 26 N.C. App. 159, 215 S.E.2d 394 (1975). However, review of the whole record failed to convince the Court "that absent the error, the jury probably would have reached a different verdict." *Morgan,* 315 N.C. at 647, 340 S.E.2d at 97. Accordingly, the Court held that "the defendant [had] not carried his burden of showing 'plain error.' " *Id.*; *see also State v. Lilley,* 318 N.C. 390, 348 S.E.2d 788 (1986).

The pattern jury instruction on the issue of retreat reads as follows:

> If the defendant was not the aggressor and the defendant was [in the defendant's own home] [or] [on the defendant's

own premises] [at the defendant's place of business] the defendant could stand the defendant's ground and repel force with force regardless of the character of the assault being made upon the defendant. However, the defendant would not be excused if the defendant used excessive force.

N.C.P.I., Crim. 308.10 (2009) (footnote omitted).

The duty not to retreat in one's own home or premises is predicated upon the absence of use of excessive force. *See State v. McCombs*, 297 N.C. 151, 253 S.E.2d 906 (1979). The instructions provided in the instant case to the jury at trial explained that, if defendant was found to have used excessive force, he would not be afforded the right to perfect self-defense and would be guilty of at least voluntary manslaughter. Morever, the instruction requested by defendant also indicates that defendant would not be excused of the killing if he used excessive force. As previously discussed, it was reasonable for the jury to conclude that defendant used excessive force. Additionally, there was sufficient evidence for the jury to determine that defendant was the aggressor in the affray. Neither the instruction given at trial, nor the instruction sought by defendant on appeal, excuse defendant if he used excessive force or was the aggressor in the affray. As such, defendant has not shown that the jury would have reached a different verdict absent the trial court's refusal to instruct on the duty not to retreat.

Defendant also cites *State v. Davis*, 177 N.C. App. 98, 627 S.E.2d 474 (2006), for support; however, that case is clearly distinguishable from the case at bar. In *Davis*, there was evidence to suggest that the failed instruction on duty not to retreat had a probable impact on the jury's finding of guilt. *Id.* at 101-03, 627 S.E.2d at 477-78. Testimony in that case tended to show that the defendant "returned fire only after [the victim] shot at him." *Id.* at 103, 628 S.E.2d at 478. The evidence presented tended to suggest that "defendant was not the initial aggressor and his right to stand his ground was at least a 'substantial feature' of his defense of self-defense." *Id.* The defendant in *Davis* was found guilty of second-degree murder. *Id.* Based on the record in *Davis*, the Court explained that "[w]ithout an instruction that defendant had the right to stand his ground when met with deadly force, the jury may have believed that defendant acted with malice, requiring it to return a verdict of guilty of second degree murder." *Id.* at 103, 628 S.E.2d at 478. As such, the Court in *Davis* held that the trial court's failure to instruct the jury that the defendant could be found not guilty by reason of self-defense in its final mandate was prejudicial error. *Id.* at 101-02, 628 S.E.2d at 477.

Viewing the evidence in the present case, we conclude that the jury would have reached the same verdict if the jury was instructed that defendant did not have a duty to retreat in the curtilage of his home. We therefore hold that "defendant has not carried his burden of showing 'plain error.' " *Hunter,* 315 N.C. at 647, 340 S.E.2d at 97 (citing *Walker,* 316 N.C. 33, 390 S.E.2d 80).

### III. Motion to Dismiss

**[3]** Finally, defendant contends that the trial court erred by denying defendant's motion to dismiss because the State failed to present sufficient evidence that defendant was the aggressor or that defendant used excessive force. We disagree.

Challenges to the sufficiency of the evidence must be viewed in the light most favorable to the State, "giving the State the benefit of all reasonable inferences." *State v. Fritsch,* 351 N.C. 373, 378-79, 526 S.E.2d 451, 455 (2000) (citing *State v. Benson,* 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). "Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *Id.*

Defendant argues that the State failed to present sufficient evidence to prove that defendant was the aggressor, or that defendant used excessive force. However, as previously determined in this opinion, there is ample evidence by which the jury could conclude that defendant was the aggressor or used excessive force. Accordingly, we conclude there was no error.

### IV. Conclusion

Based on the foregoing, we conclude that defendant received a fair trial free from error.

No error.

Judges STEELMAN and STEPHENS concur.